UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

TESHARA HOGAN

                                        Plaintiff,

        -against-

MATTONE GROUP ELMHURST CO., LLC AND
RARE HOSPITALITY INTERNATIONAL, INC.

                                        Defendants.
----------------------------------------------------------------x

**1:22-cv-3035**

**COMPLAINT**

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff Teshara Hogan (hereafter also referred to as "Plaintiff"), by counsel, Parker Hanski LLC, as and for the Complaint in this action against Defendants Mattone Group Elmhurst Co., LLC and Rare Hospitality International, Inc. (together referred to as "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.   Plaintiff, Teshara Hogan, an individual with a mobility disability, requires a wheelchair for mobility.

2.   Plaintiff brings this action because Defendants deny her equal access to their place of public accommodation, the Longhorn Steakhouse premises, a Restaurant located at 92-30 59th Avenue, Queens due to her mobility disability.

3.   Defendants deny Plaintiff access to the Longhorn Steakhouse premises as they maintain architectural barriers throughout the premises that deny and restrict entry to Plaintiff due to her disability.

2

4.   Because Defendants maintain architectural barriers at their place of public accommodation, they deny Plaintiff the opportunity to patronize and dine at their place of public accommodation, an opportunity defendants make available to members of the public without disabilities.

5.   In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses to redress Defendants' unlawful disability discrimination against Plaintiff.

6.   Defendants unlawfully discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New York Human Rights Law ("State HRL"), New York Executive Law ("N.Y. Exec. Law") Article 15, the New York Civil Rights Law, § 40 *et seq.* ("N.Y. CRL"), and the New York City Human Rights Law ("City HRL"), Administrative Code of the City of New York ("N.Y.C. Admin. Code") Title 8.

7.   As explained more fully below, Defendants own, lease, lease to, operate, and control a place of public accommodation through which they violate the laws that prohibit disability discrimination: the ADA, the State HRL, the N.Y. CRL and the City HRL (collectively, the "Human Rights Laws").

8.   Defendants violate the Human Rights Laws through their actions, and those of their agents and employees.

9.   Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

3

10. Defendants **chose to ignore** the explicit legal requirements that obligated them to make their place of public accommodation physically accessible and usable by persons with disabilities[1].

11. By ignoring their obligation to provide an accessible place of public accommodation, Defendants reveal their indifference to Plaintiff's (and other individuals with disabilities') right to equal opportunity to their publicly available place, the Longhorn Steakhouse premises.

12. Aware that their decision to maintain architectural barriers and violate the disability access requirements would be indiscernible most persons, Defendants presumed they would never need to comply with the Human Rights Laws.

13. This action seeks to right Defendants' wrongs. Therefore, Plaintiff seeks to compel Defendants to make their place of public accommodation physically accessible to individuals with disabilities so that Plaintiff can enjoy the full and equal opportunity that Defendants provide to customers without disabilities.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiff's claims involve federal questions regarding the deprivation of Plaintiff's rights under the ADA.

---

[1] As used in Plaintiff's Complaint the terms "accessible" and "readily accessible to and usable" mean that the place of public accommodation complies with the design and construction standards referenced in Plaintiff's Complaint and can be approached, entered, and used by people having physical disabilities. *See* 42 U.S.C. § 12183, 28 C.F.R. § 36.406, and N.Y.C. Admin. Code § 27-232; and § 28-1102.1.

4

15. This Court also has supplemental jurisdiction over Plaintiff's State HRL, N.Y. CRL, and City HRL claims pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' discriminatory acts alleged herein occurred in this district and Defendants' place of public accommodation is located in this district.

**PARTIES**

***Plaintiff***

17. At all times relevant to this action, Plaintiff Teshara Hogan has been and remains a resident of the State and City of New York.

18. Plaintiff suffers from medical conditions that inhibit her ability to walk and which restrict her body motion range and movement.

19. Due to her impairment, Plaintiff uses a wheelchair for mobility.

***Defendants***

20. Defendant Mattone Group Elmhurst Co., LLC is an Domestic Limited Liability Company that engages in business in New York.

21. As a Domestic Limited Liability Company, Defendant Mattone Group Elmhurst Co., LLC is not a governmental entity.

22. Defendant Mattone Group Elmhurst Co., LLC owns the building located at 92-30 59th Avenue in Queens County, New York (hereinafter referred to as "92-30 59th Avenue").

23. Defendant Rare Hospitality International, Inc. is a Georgia Foreign Business Corporation that engages in business in New York.

24. Defendant Rare Hospitality International, Inc. is not a governmental entity.

5

25. At all relevant times, defendant Rare Hospitality International, Inc. owned and operated Longhorn Steakhouse located in 92-30 59th Avenue (hereinafter also referred to as the "Longhorn Steakhouse" premises).

26. Defendant Rare Hospitality International, Inc. leases the Longhorn Steakhouse premises from defendant Mattone Group Elmhurst Co., LLC.

27. Upon information and belief, Mattone Group Elmhurst Co., LLC and Rare Hospitality International, Inc. have a written lease agreement for the Longhorn Steakhouse premises.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

28. The Longhorn Steakhouse premises is operated by private entities as no defendant is a State or local government; a department, agency, special purpose district, or other instrumentality of a State or local government; or a commuter authority. 42 U.S.C. § 12131(1) and § 12181(6).

29. The operations of the Longhorn Steakhouse premises affect commerce. 28 C.F.R. § 36.104.

30. As a Restaurant, Longhorn Steakhouse located at 92-30 59th Avenue is a place of public accommodation pursuant to the Human Rights Laws. *See* 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; N.Y. Exec. Law § 292(9); and the N.Y.C. Admin. Code § 8-102.

31. Each of the Defendants is an entity required to comply with the Human Rights Laws as the Defendants own, lease, lease to, control or operate a place of public accommodation within the meaning of the Human Rights Laws. *See Id*.

6

32. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the Human Rights Laws. *See* 28 C.F.R. § 36.201(b); *see also* 42 U.S.C. 12182(a), N.Y. Exec. Law §2962(a), N.Y.C. Admin. Code § 8-107(4)(a).

33. N.Y.C. Admin. Code § 19-152 and § 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain the public sidewalk that abuts its real property.

34. As Defendant Mattone Group Elmhurst Co., LLC is required to maintain, repave, reconstruct, and repair the public sidewalk that abuts its property, Defendant Mattone Group Elmhurst Co., LLC has continuously controlled, managed, and operated the public sidewalk that abuts 92-30 59th Avenue, including the portion of the sidewalk that constitutes the entrance the Longhorn Steakhouse premises.

35. Numerous architectural elements at the Longhorn Steakhouse premises prevent or restrict physical access to persons with disabilities ("architectural barriers"), including Plaintiff.

36. The architectural barriers at the Longhorn Steakhouse premises include gateway barriers that exclude Plaintiff and restrict her physical access at the paths of travel and entrance to the Longhorn Steakhouse premises.

37. Upon information and belief, the Longhorn Steakhouse premises opened for business in 2014.

38. Upon information and belief, the Longhorn Steakhouse premises occupies the entire building located at 92-30 59th Avenue.

7

39. Upon information and belief, the building in which the Longhorn Steakhouse premises is located was designed and constructed as a Restaurant.

40. Upon information and belief, the building in which the Longhorn Steakhouse premises is located was designed and newly constructed during or after 2014.

41. Upon information and belief, the areas of 92-30 59th Avenue attached and related to the Longhorn Steakhouse premises were designed and newly constructed during or after 2014.

42. As a commercial building designed and constructed after 1993 the Longhorn Steakhouse premises and the areas of 92-30 59th Avenue related to it constitute "new construction" within the meaning of the ADA.  *See* 28 C.F.R. 36.402(b)(1).

43. To create the Longhorn Steakhouse premises, Defendants constructed the Longhorn Steakhouse's physical space pursuant to architectural drawings.

44. The architectural drawings used by Defendants to construct the Longhorn Steakhouse premises detailed the work required to build the Longhorn Steakhouse premises to Defendants' specifications. *See* N.Y.C. Admin Code § 28-104.7.1.

45. Upon information and belief, the architectural drawings detailed the Longhorn Steakhouse premises' floor plan, layout, fixtures, flooring, entrances, bathrooms, dining rooms and demised spaces for waiting, among other architectural elements. *See Id*.

46. Upon information and belief, the architectural drawings also detailed the legal requirements that Defendants were obligated to comply with in their design and construction of the Longhorn Steakhouse premises. *See Id.*

47. Upon information and belief, the legal requirements detailed in the architectural drawings included the design and construction standards that mandate the

8

provision of physical access for persons with physical disabilities at the Longhorn

Steakhouse premises. *See Id.*

48. Upon information and belief, the design and construction standards referenced

in Defendants' architectural drawings included:

i. the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 *et seq.* (the "1968 BC"), inclusive of ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"[2], and together with the 1968 BC, the "1968 NYC Standards");

ii. the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* [3] and Appendix E (the "2008 BC"), inclusive of ICC A117.1-2003 (the "2008 Ref Std") and together with the 2008 BC, the "2008 NYC Standards");

iii. the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* and Appendix E (the "2014 BC"), inclusive of and ICC A117.1-2009[4] (the "2014 Ref. Std., and together with the 2014 BC, the "2014 NYC Standards").

iv. the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A[5]; (hereinafter referred to as the "1991 ADA Standards"); and

v. the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (hereinafter referred to as the "2010 ADA Standards", and together with the 1991 ADA Standards, the "ADA Standards").

The 2014 NYC Standards, collectively with the 1968 NYC Standards and the 2008 NYC Standards, are referred to herein as the "NYC Standards". The ADA Standards together with the NYC Standards are collectively referred to herein as the "Accessibility Standards".

---

[2] *See* N.Y.C. Admin Code §§ 27-292.2 and Reference Standard 4-6.
[3] As such provisions (N.Y.C. Admin. Code § 28-1101 and Appendix E) existed prior to the effective date (December 31, 2014) of the 2014 BC.
[4] *See* N.Y.C. Admin Code § 28-1101.2 and Appendix E, § § E101 and E112.
[5] Republished in 28 CFR part 36 Appendix D on Sept. 15, 2010. 28 C.F.R. § 36.104, 75 Fed. Reg. 56236, 56237 (September 15, 2010).

49. Upon information and belief, Defendants' lease agreement for the Longhorn Steakhouse premises provides that the space must comply with the Human Rights Laws and the Accessibility Standards.

50. Upon information and belief, Defendants did not comply with the Accessibility Standards, *i.e.*, the legal requirements related to physical access to persons with disabilities, when they performed construction work to the Faherty premises.

51. As Defendants had knowledge of, and specific notice regarding, their obligation to comply with the Accessibility Standards, Defendants knowingly and with deliberate indifference failed to comply with the Accessibility Standards when they performed design and construction work to 92-30 59th Avenue and the Longhorn Steakhouse premises.

52. Defendants continue their knowing refusal to comply with the Accessibility Standards, as Defendants are aware of their obligation to provide an accessible place of public accommodation.

53. As a result of Defendants' failure to comply with the Accessibility Standards, the services, features, elements, and spaces of the Longhorn Steakhouse premises are not accessible to Plaintiff as required by the Human Rights Laws.  *See* 42 U.S.C. § § 12182(a), § 12183(a), and § 12186(b); N.Y. Exec. Law 296(2)(a); and N.Y.C. Admin. Code §8-107(4).

54. Because Defendants failed to comply with the Accessibility Standards Plaintiff was, and remains, unable to enjoy safe and equal access to the areas of the Longhorn Steakhouse premises that are open and available to the public.

55. Within the past three years of filing this action, Plaintiff has desired and attempted to access the Longhorn Steakhouse premises.

56. Plaintiff desires to access the Longhorn Steakhouse premises but remains deterred from doing so due to the architectural barriers extant at the premises.

57. Barriers to access (and the Accessibility Standards violated) which Plaintiff encountered and that deter her from patronizing the Longhorn Steakhouse premises include, but are not limited to, the following:

58. Architectural barriers which Plaintiff encountered and those that deter her from patronizing the Longhorn Steakhouse premises include, but are not limited to, the following:

I.  There are no accessible parking spaces in the parking lot. Although there are parking spaces marked as "accessible" none of the spaces comply with the Accessibility Standards.
    *Defendants fail to provide that where parking spaces are provided, accessible parking spaces shall be provided. See 1991 ADA Standards § 4.1.2(5)(a); 2010 ADA Standards § 208.1; 1968 BC 27-292.19(a); 2008 BC §1106.1; and §2014 BC § 1106.1.*
    *Defendants fail to provide that the number of accessible parking spaces shall be in accordance with 1991 ADA Standards 4.1.2(5)(a) and 2010 ADA Standards §208.2.*
    *Defendants fail to provide that where parking spaces are provided, five percent of the total number of parking spaces, but not less than one parking space, shall be accessible parking spaces. See 1968 NYC 27-292.19(a); 2008 BC §1106.1; and §2014 BC § 1106.1.*

II. There are no van accessible parking spaces in the parking lot.
    *Defendants fail to provide that for every eight or fraction of eight accessible parking spaces required, at least one shall be a van accessible parking space. See 1991 ADA Standards § 4.1.2(5)(b).*
    *Defendants fail to provide that parking facilities containing less than 30 parking spaces shall have at least one van accessible parking space ("high clearances accessible parking space") or parking facilities containing more than 30 parking spaces shall have at least two van accessible parking space ("high clearances accessible parking space"). See 1968 BC Reference Standard RS 4-6.*

11

*Defendants fail to provide that for every six or fraction of six accessible parking spaces required, at least one shall be a van accessible parking space. See 2010 ADA Standards § 208.2.4; 2008 BC § 1106.5; and 2014 BC § 1106.5.*

III.  None of the parking spaces marked as accessible nor their access aisle meet the minimum size required for van accessible parking spaces.
*Defendants fail to provide accessible van parking spaces that are at least 132 inches wide. See 1991 ADA Standards § 4.6.3; 2010 ADA Standards § 502.2; 2008 Ref Std §502.2; and 2014 Ref Std §502.2.*
*Defendants fail to provide access aisles that are at least 96 inches wide.  See 1991 ADA Standards § 4.1.2(5)(b); and 1968 BC Reference Standard RS 4-6.*

IV.  The access aisles at the parking spaces noted as accessible are not marked to discourage parking in the aisles.
*Defendants fail to provide that the access aisles serving car and van accessible parking spaces shall be marked to discourage parking in them.   See 2010 ADA Standards § 502.3.3; 2008 Ref Std § 502.4.4; and 2014 Ref Std § 502.4.4.*

V.  The parking spaces marked as accessible and their access aisles have slopes in excess of 2%.
*Defendants fail to provide that accessible parking spaces and access aisles serving them are level with slopes not more than 1:48 (2.0%) and without changes in level. See 1991 ADA Standards § 4.6.3; 2010 ADA Standards § 502.4; 2008 Ref Std §502.5; and 2014 Ref Std §502.5.*

VI.  The public entrance to the restaurant is not accessible.
*Defendants fail to provide that at least 50% of all its public entrances are accessible.  See 1991 ADA Standards § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are accessible.  See 2010 ADA Standards § 206.4.1.*
*Defendants fail to provide that the primary entrances are accessible. See 1968 BC § 27-292.5(a).*
*Defendants fail to provide that all public entrances are accessible. See 2008 BC § 1105.1; and 2014 BC § 1105.1.*

VII.  The pull side of the public/primary exterior door does not have the minimum required maneuvering clearance due to sloping.
*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA Standards § 4.13.6; 2010*

12

*ADA Standards § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014 Ref Std § 404.2.3.*

VIII.  The exterior public/primary entrance doors are too heavy for persons in wheelchairs to use and difficult to open as they require more than 8.5 lbs. of force to open
*Defendants fail to provide a door that requires less than eight-and-one-half pounds of force to open.  See 1968 Ref Std § 4.13.11.*

IX.  The interior public/primary entrance doors are very too heavy and difficult to open as they require more than 5 lbs. of force to open.
*Defendants fail to provide a door that requires less than five pounds of force to open.  See 1991 ADA Standards 4.13.11; 2010 ADA Standards 404.2.9; 1968 Ref Std § 4.13.11; 2008 Ref Std § 404.2.8; and 2014 Ref Std §404.2.8.*

X.  The host counter does not comply with the Accessibility Standards.
*Defendants fail to provide that, where provided, at least one of each type of sales counter and service counter is accessible.  See 1991 ADA Standards § 7.2; 2010 ADA Standards § 227.3;1968 BC § 27-292.1; 2008 BC § 1109.12.3; and 2014 BC § 1109.11.3.*

XI.  The host counter is more than 36 inches high above the finish floor.
*Defendants fail to provide that an accessible portion of the (sales or service) counter surface is 36 inches long minimum and 36 inches high maximum above the finish floor with a clear floor or ground space positioned for a parallel approach adjacent to the accessible portion of the counter. See 1991 ADA Standards § 7.2; 2010 ADA Standards § 904.4.1; 1968 BC § 27-292.1; 2008 Ref Std § 904.3.1; and 2014 Ref Std § 904.3.1.*

XII.  There is no accessible dining or drinking spaces at the bar.
*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 ADA Standards § 5.2.*

*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA Standards § 226.1.*

XIII.  There are no accessible dining or drinking spaces in any of the dining areas.
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA Standards § 5.1; 2010 ADA*

*Standards § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11 and 2014 BC § 1109.10.*
*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA Standards § 226.1.*

XIV.   The toilet room is not accessible.
*Defendants fail to provide accessible toilet facilities. See 1991 ADA Standards § 4.1.3(11); 2010 ADA Standards § 213.1; 1968 BC § 27-292.12; 2008 BC § 1109.2; and 2014 BC § 1109.2.*

XV.   The toilet compartment marked as accessible is not compliant with the Accessibility Standards.
*Defendants fail to provide at least one accessible toilet compartment. See 1991 ADA Standards § 4.23.4; 2010 ADA Standards § 213.3.1; 1968 BC § 27.292.12; 2008 BC§ 1109.2.2; and 2014 BC § 1109.2.2.*

XVI.   The toilet compartment in the toilet room does not have the minimum required size due to a wall mounted baby changing station.
*Defendants fail to provide an accessible toilet compartment that is 60 inches wide minimum measured perpendicular to the side wall, and 56 inches deep minimum for wall hung water closets. Defendants fail to provide an accessible toilet compartment that is 60 inches wide minimum measured perpendicular to the side wall, and 59 inches deep minimum for floor mounted water closets. See 1991 ADA Standards § 4.17.3; 2010 ADA Standards § 604.8.1.1; 1968 Ref Std § 4.17.3; 2008 Ref Std § 604.8.2 and 2014 Ref Std § 604.9.2.*

XVII.   The coat hook in the toilet room's accessible marked compartment is not within the reach range required by the Accessibility Standards.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 ADA Standards § 4.2.6; 2010 ADA Standards § 308.3.1, 1968 Ref Std § 4.2.6; 2008 Ref Std § 308.3.1; and 2014 Ref Std § 308.3.1.*

XVIII.   The toilet room's accessible marked toilet compartments has a seat cover dispenser that is outside the reach range permitted by the Accessibility Standards.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 ADA Standards § 4.2.6; 2010 ADA Standards § 308.3.1, 1968 Ref Std § 4.2.6; 2008 Ref Std § 308.3.1; and 2014 Ref Std § 308.3.1.*

XIX.   The lavatory in the toilet room is not accessible.
*Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities. See 1991 ADA Standards § 4.23.6; 2010 ADA*

14

*Standards § 213.3.4; 1968 BC § 27-292.12; 2008 BC § 1109.2; and 2014 BC § 1109.2.*

XX.   The lavatories in the toilet room have a rim/counter that is more than 34 inches above the finish floor.
*Defendants fail to provide that accessible lavatories have the front of the rim or counter surface 34 inches maximum above the finish floor. See 1991 ADA Standards §§ 4.19.2 and 4.24.2; 2010 ADA Standards §606.3, 1968 Ref Std § 4.19.2; 2008 Ref Std § 606.3 § and 2014 Ref Std § 606.3.*

XXI.  The public/primary entrance doors also serve as exits and are not accessible as described above.
*Defendants fail to provide accessible means of egress in the number required by the code.  See 1991 ADA Standards § 4.1.3(9); 2010 ADA Standards § 207.1; 1968 BC §§ 27-292.1 and 27-357; 2008 BC § 1007.1; and 2014 BC § 1007.1.*

59. Upon information and belief, a full inspection of the Longhorn Steakhouse premises will reveal the existence of other barriers to access.

60. To properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Longhorn Steakhouse premises so that she may catalogue other architectural barriers and have Defendants remediate the Longhorn Steakhouse premises so that it is accessible to her.

61. Plaintiff therefore gives notice that, to the extent not contained in this Complaint, she intends to amend her Complaint to include any violations of the Accessibility Standards or Human Rights Laws discovered during an inspection of the Longhorn Steakhouse premises.

62. Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

15

63. Defendants continue to discriminate against Plaintiff and other mobility impaired customers by providing less and unequal access to its premises, services, offerings, and accommodations than what they provide to nondisabled customers.

64. Defendants continue to discriminate against Plaintiff and other mobility impaired customers by limiting and reducing the options available to such patrons as compared to the options available to nondisabled customers.

65. Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures comply with the Human Rights Laws.

66. Defendants have not provided accommodations or modifications so that Plaintiff and other persons with disabilities can have equal opportunity with respect to the Longhorn Steakhouse premises.

67. Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the Human Rights Laws. This threat is particularly evidenced by the fact that the architectural barriers to access within the Longhorn Steakhouse premises continue to exist and deter and deny Plaintiff access.

68. Plaintiff is located near the Longhorn Steakhouse premises and frequents the area where the Longhorn Steakhouse premises is located.

69. Plaintiff intends to patronize the Longhorn Steakhouse premises after it becomes fully accessible to Plaintiff.

## ALLEGATIONS RELATED TO TESTER STATUS

70. Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the Longhorn Steakhouse premises is accessible.

16

71. Plaintiff intends to patronize the Longhorn Steakhouse premises as a "tester" to monitor, ensure, and determine whether the Longhorn Steakhouse premises is accessible.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

72. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

73. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.

74. As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility, and has restricted use of her arms and hands.

75. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. 36.201(b).

76. The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation.  28 C.F.R. 36.201(b).

77. Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of the Longhorn Steakhouse premises, a place of public accommodation is liable to Plaintiff.

17

78. None of these Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity.  28 C.F.R. 36.201(b).

79. Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

80. Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

81. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are neither desired or welcome as patrons of their public accommodation.

82. Defendants performed design and construction work to build out the Longhorn Steakhouse premises but failed to perform the work so that Longhorn Steakhouse premises, a place of public accommodation, complies with the 1991 ADA Standards or the 2010 ADA Standards.

83. Because the Longhorn Steakhouse premises does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to her mobility disability.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

84. Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff because of disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

85. Defendants fail to provide an integrated and equal setting for the disabled at the Longhorn Steakhouse premises in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

86. In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make the Longhorn Steakhouse premises compliant with the ADA Standards (accessible) to the maximum extent feasible when they performed design and construction work that constituted alterations to the Longhorn Steakhouse premises.

87. Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas in violation of 28 C.F.R. § 36.403.

88. Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.

89. It has been and remains readily achievable for Defendants to make their place of public accommodation fully accessible.

90. By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

91. In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal to the extent the removal of any of the barriers to access was not readily achievable. 28 C.F.R. § 36.305.

92. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

93. Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation that is not compliant with the ADA Standards, and therefore not accessible.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

94. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

95. Plaintiff suffers from medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.

96. As a result of her impaired bodily functions, Plaintiff suffers from a disability within the meaning of the N.Y. Exec. Law § 292(21).

97. The State HRL guarantees the right of all individuals to equal opportunity with respect to places of public accommodations, regardless of disability. N.Y. Exec. Law § 291 and § 290.

**Section § 296(2) Violations: Denial of Equality of Opportunity.**

98. To protect the guaranteed right of persons with disabilities to equal opportunity, the State HRL provides that it is an unlawful discriminatory practice for owners, lessees, and operators of places of public accommodation "directly or indirectly to refuse, withhold from or deny any of the accommodations, advantages, facilities or privileges" of their place of public accommodation to a person because of disability. N.Y. Exec. Law § 296(2)(a).

99. Defendants engage in an unlawful discriminatory practice in violation of the State HRL as they directly or indirectly deny Plaintiff "equal opportunity" to enjoy the offerings of their place of public accommodation. N.Y. Exec. Law 296(2)(a).

20

100.    Defendants engage in an unlawful discriminatory practice prohibited by the State HRL as they created and maintain a place of public accommodation, the Longhorn Steakhouse premises, that is not accessible to Plaintiff due to disability. N.Y. Exec. Law § 296(2)(a).

101.    Defendants continue to discriminate against Plaintiff in violation of the State HRL by maintaining and/or creating an inaccessible place of public accommodation. N.Y. Exec. Law § 296(2).

102.    Defendants have subjected Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation because Plaintiff is disabled.

103.    Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use the Longhorn Steakhouse premises because Plaintiff is disabled.

**Section § 296(2)(c) Violations: Failure to Make Readily Achievable Accommodations and Modifications.**

104.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(iii).

105.    It remains readily achievable for Defendants to remove the barriers to access.

106.    Defendants cannot demonstrate that the removal of the barriers to access is not readily achievable. N.Y. Exec. Law § 296(2)(c)(iii) and (v).

21

107.    Alternatively, should Defendants demonstrate that the removal of any barriers to access is not readily achievable, Defendants discriminate in violation of the State HRL as they fail to provide persons with disabilities, including Plaintiff, equal opportunity to enjoy the privileges, advantages, and accommodations they offer at their place of public accommodation through alternative methods. N.Y. Exec. Law § 296(2)(c)(v).

108.    It would be readily achievable to make Defendants' place of public accommodation accessible through alternative methods.

109.    Defendants have failed to make reasonable modifications to their policies, practices, and procedures necessary to provide Plaintiff with access to their place of public accommodation, and the privileges, advantages, or accommodations they offer therein in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(i).

110.    Defendants cannot demonstrate that modifying their policies, practices and procedures would fundamentally alter the nature of their facility of the privileges, advantages, or accommodations they offer.

111.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(v).

112.    It is and would have been readily achievable for Defendants to make their place of public accommodation fully accessible for persons with disabilities.

113.    It does not and would not have imposed an undue hardship or undue burden on Defendants to have made their place of public accommodation fully accessible for persons with disabilities.

22

**Section 296(6) Violations: Aid and Abet Discrimination.**

114.    Under the State HRL it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so". N.Y. Exec. Law § 296(6).

115.    Each of the Defendants have aided, abetted, incited, compelled, or coerced others to engage in unlawful discriminatory practices.

**Section 300: The State HRL's Liberal Construction Requirement.**

116.    In 2019, the New York State legislature amended the Executive Law to provide increased protections for classes protected by the State HRL. N.Y. Exec. Law § 300, as amended by Chapter 160 of the Laws of 2019, § 6.

117.    The 2019 amendment added language at the start of the State HRL's Construction section (N.Y. Exec. Law § 300) to explain that the law must be:

> construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.

*Id*.

118.    With the 2019 amendment, the State HRL is no longer coextensive with federal anti-discrimination law.

119.    Defendants' conduct is therefore subject to a significantly stricter standard under the State HRL than under Federal anti-discrimination laws, including the ADA.

120.    The State HRL's stricter standards include those situations where the ADA has provisions that are comparably worded to the State HRL's provisions. *Id*.

121.    Defendants must therefore provide an accessible place of public accommodation in instances where the ADA does not require Defendants to provide accessibility.

122.    As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

123.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

124.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

125.    Plaintiff suffers from medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

126.    Due to her impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

127.    The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity to places of public accommodations – in the words of the City HRL, the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

24

128.     Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they as they created and maintain a place of public accommodation, the Longhorn Steakhouse premises, that is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

129.     Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of the Longhorn Steakhouse premises due to her disability.

130.     Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

131.     Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a; see also N.Y.C. Admin. Code § 19-152 and § 7-210.

132.     Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

133.     Defendants discriminate against Plaintiff as they subject her to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

25

134.    Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of their place of public accommodation because of her disability.

135.    Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001); See N.Y.C Admin. Code § 8-107(17).

136.    Defendants' failure to comply with the NYC Building Code as well as their failure to expend monies to upgrade and alter the Longhorn Steakhouse premises to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

137.    Because the result of Defendants' policy and practices is a place of public accommodation that is not accessible to people with disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

138.    Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations for the needs of persons with disabilities (including by failing to remove the architectural barriers to access detailed in Paragraph 58 herein) so that individuals with disabilities, including Plaintiff, have equal opportunity to enjoy what Defendants offer at the Longhorn Steakhouse premises, Defendants' place of public accommodation. N.Y.C. Admin. Code § 8-107(15)(a).

26

139.     Defendants have known, or should have known, that members of the public, which includes current and prospective patrons such as Plaintiff, have mobility disabilities.

140.     Defendants have known, or should have known, reasonable accommodations (including by failing to remove the architectural barriers to access detailed in paragraph 58 herein) are required so that persons with mobility disabilities can have the equal opportunity to enjoy what Defendants offer at the Longhorn Steakhouse premises.

141.     It would not cause undue hardship in the conduct of the Defendants' business to remove the architectural barriers to access detailed in paragraph 58 herein as a reasonable accommodation for persons with disabilities.

142.     Defendant cannot demonstrate that it would cause undue hardship to the conduct of their respective businesses to remove the architectural barriers to access detailed in paragraph 58 herein as a reasonable accommodation for persons with disabilities.

143.     Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of Defendants' failure to remove the barriers to access identified in paragraph 58, and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

144.     To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally

27

protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

145.     The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85§ 7 and Local Law 35 § 2.

146.     The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

147.     The 2016 Amendments to the City Human Rights Law additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

148.     Due to the above-referenced amendments, the New York City Human Rights Law provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and State HRL provide to persons in the same protected classes.

149.     Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law

150.     Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

151.     Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

152.     Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

153.     Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

154.     The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

155.     Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

29

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

156.    In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

157.    Each of the Defendants have aided and abetted others in committing disability discrimination.

158.    Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

159.    Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

160.    In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

161.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

162.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

30

163.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

164.     Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to City HRL N.Y.C. Admin. Code § 8-502.

165.     By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies Defendants should have expended to provide an accessible space to themselves.

166.     By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.

167.     The amounts Defendants diverted to themselves, and the unlawful revenues they gained, plus interest must be disgorged.

168.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

169.     Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

31

170.   Defendants discriminated against Plaintiff in violation of the State HRL. N.Y. Exec. Law § 290 *et seq.*

171.   Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by N.Y. CRL §§ 40-c and 40-d for each and every violation.

172.   Notice of this action has been served upon the Attorney General as required by N.Y. CRL § 40-d.

## INJUNCTIVE RELIEF

173.   Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief Ordering Defendants to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

174.   Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

175.   Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, State HRL, and the City HRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.   Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the State HRL, and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.   Issue a permanent injunction ordering Defendants to close and cease all business until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, the State HRL and the City HRL, including but not limited to the violations set forth above;

C.   Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.   Award Plaintiff compensatory damages as a result of Defendants' violations of the State HRL and the City HRL;

E.   Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the City HRL;

F.   Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to N.Y. CRL §§ 40-c and 40-d;

G.   Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA, the State HRL, and City HRL; and

H.  For such other and further relief, at law or in equity, to which Plaintiff

may be justly entitled.

Dated: May 23, 2022
New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**

By:/s_____
Adam S. Hanski, Esq.
Attorneys for Plaintiff
40 Worth Street, 10th Floor
New York, New York 10013
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com

34